UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - -

UNITED STATES OF AMERICA,   :
                        : CRIMINAL NO. 1:18-CR-43
          Plaintiff,    :
   -vs-               : Preliminary Pretrial Conference
                        :
YANJUN XU,                : Tuesday, October 16, 2018
                        : 12:45 p.m.
          Defendant.   : Cincinnati, Ohio

- - -

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE
- - -

For the Plaintiff:  Timothy S. Mangan
                    Emily N. Glatfelter
                    Assistant United States Attorneys
                    221 East Fourth Street, Suite 400
                    Cincinnati, Ohio  45202

For the Defendant:  Ralph W. Kohnen
                    Jeanne M. Cors
                    Taft Stettinius & Hollister, LLP
                    425 Walnut Street, Suite 1800
                    Cincinnati, Ohio 45202

                    Robert K. McBride
                    Taft Stettinius & Hollister, LLP
                    1717 Dixie Highway, Suite 910
                    Covington, Kentucky  41011

Law Clerk:          Cristina V. Frankian

Courtroom Deputy:  Scott Lang

Court Reporter:     Julie A. Wolfer, RDR, CRR
                    100 East Fifth Street
                    Cincinnati, Ohio  45202

- - -

Proceedings recorded in stenotype.
Transcript produced using computer-aided transcription.

PROCEEDINGS

(In open court at 12:45 p.m.)

THE COURT: Please be seated.

Good afternoon. We are on the record in the open courtroom on the criminal docket in the matter of United States of America versus Mr. Xu. We are set for a preliminary pretrial conference in person.

Could the attorneys enter their appearances for the record? Who appears on behalf of the government?

MR. MANGAN: Your Honor, Tim Mangan on behalf of the government. With me at counsel table is Emily Glatfelter.

THE COURT: Good morning or good afternoon to the two of you.

And on behalf of defendant?

MR. KOHNEN: Your Honor, good afternoon. Ralph Kohnen on behalf of Mr. Xu with my partner Jeanne Cors and my partner Robert McBride who's appearing kind of specially today. His motion for admission pro hac vice is I'll call it pending.

THE COURT: Very well. Good afternoon.

MR. MCBRIDE: Good afternoon, Judge. Thank you for allowing me to appear today.

THE COURT: Welcome back to you. Are you out of the practice?

MR. MCBRIDE: No, sir. Until six months ago, I was an AUSA across the river in EDKY and am -- having practiced over

here, I was a national security prosecutor there for 15 years. Before that, I was a Navy JAG. Before that, I was a soldier in the Army National Guard.

THE COURT: Well, welcome.

MR. MCBRIDE: Thank you, Judge.

THE COURT: Mr. Kohnen, you look familiar. You need not respond.

We are here pursuant to CIPA for a pretrial conference to consider matters relating to classified information, to establish the timing of requests for discovery, the provision of notice required by Section 5 of the Act, and the initiation of procedures established by Section 6 of the Act, consider any matters which relate to classified information or which may promote fair and expeditious trial.

I'm eager to know the volume of classified information from your perspective at this time, volume for purposes of review, size for purposes of storage, and specifically I'm interested in time frame. When does the government anticipate its CIPA motions? What do you propose time frame on discovery of nonclassified info? And clearance, where are we on clearance? I'm apparently cleared. We're working on getting my law clerk cleared. We're thinking about the court reporter and the courtroom deputy. And I want to touch base on a protective order.

So perhaps I could hear in the first instance from the

prosecutor as to what presents and how you anticipate this going forward.

MR. MANGAN: Thank you, Your Honor. Let me address the nonclassified piece of it first, if I may.

First, with respect to a protective order, we had drafted a proposal that we submitted early that we shared with the defense I think last week, the day before his initial appearance. I know they've reviewed it. We've discussed it. They were going to get back to us with some suggested language on a few provisions. So I would say that is a work in progress, but I think we're moving along.

THE COURT: Very well.

MR. MANGAN: So there is an agreed protective order we are working on.

THE COURT: Does that speak to the classified information as well?

MR. MANGAN: It does not specifically speak to that because it really comes down to when the classified information -- it's either going to go through a deletion process in which case it wouldn't go to the defense, or if it was something where there is a portion of it that needs to be produced, then that would essentially have to get designated, you know, an unclassified version of it would then be produced, and that would be designated under the protective order. So there doesn't need to be a special classified provision within

the protective order, at least as we see it.

So let me stay on the nonclassified piece for now.  So that's the protective order that we're working on.

We have an initial batch of discovery which really covers the main pieces that are alleged in the indictment. That is ready to go once we get the protective order part hammered out.  So that's at least queued up.

A portion of that discovery is going to be rolling from the standpoint of I think, like I said, the key pieces are ready to go.  However, there are a number of accounts that were obtained in the course of the investigation.  And what I mean by that, Your Honor, would be like e-mail accounts or cloud accounts.  We also obtained a number of phones from Belgium in the course of the arrest.  We got those between the time of the arrest and the time that he was turned over last week.  But the issue with those, Your Honor, is they are currently being reviewed and assessed, you know, to find relevant evidence, but they are almost entirely in Chinese so the translation process is substantial.  We've been -- already devoted a large number of resources to that, but we do think we are making progress. But that is why I wanted to just give the Court a heads-up that this will have to go on sort of a rolling basis.  We tried to do a triage, identify the most critical pieces to get to the defense right away, but there will be pieces of it that we are still working to vet, particularly those phones that we

received from Belgium.

So that sort of covers what we have ready and what we are still working on in terms of the nonclassified discovery, if you will.

Turning to the CIPA portion of it, the volume of it, if you were just talking about it in terms of paper, is not prohibitive. It's not a huge volume. However, there are multiple things that need to be reviewed and they are not all at -- they are at multiple agencies and they require us to physically travel to those agencies. So I have already gone to Washington once. We are working with attorneys in Washington to help us get that review done. Even though we didn't know when the extradition would happen or if it would happen until it did, we had started that process, you know, some time ago. And we believe we're getting close to having that at least getting our arms around everything that is there so that we can then come in and represent to the Court what we want to do.

We think at this point that it is most, if not all of it, we will be asking for deletion. In other words, it would fall under a Section 4 standard where we would say to the Court this is -- it does pertain to the defendant; however, it is not helpful to the defense and we would ask that it be deleted from discovery. Essentially we're willing to go without it in terms of the use in the case. We think most of it will fall into that bucket, Your Honor. We're still trying to vet the last

couple pieces to see if there's anything that we would need to disclose or affirmatively use.

From a timing standpoint, what we were going to suggest to the Court is that we come back in 60 days to try to set a more firm schedule that would -- I think we'd have a better handle on what deadlines we could meet in terms of giving the Court the Section 4 production because obviously we need to produce things to the Court in a classified manner for the Court to make a decision on the deletion.  I think 60 days would give us enough time to get where we want to to give the Court a meaningful estimate for that motion.  So that's what we're proposing.

We would also ask obviously in accordance with that that the Court put on an ends of justice order and a continuance given the complexity of issues in this case, both in terms of the classified information but also the translation issues that are present.

From a clearance standpoint, you asked about the clearances.  I don't know the current status.  I know the Court has appointed the CISO officer and that they have been given names to start the process.  I have not heard an update in the last week or so, you know, as to where that is or what their time frame would be.  We'd have to come back to you on that, Your Honor.  I simply don't know -- and they may have given the Court an estimate when they first reached out.  I just don't

know.

THE COURT: I've simply asked the officer to proceed on security clearances for my law clerk with the expectation I may ask for the court reporter who may already be cleared and a courtroom deputy.

You all don't need security clearances; right?

MR. MANGAN: We already have them on our end, Your Honor.

THE COURT: Okay.

MR. MANGAN: So I think you've got the right ones in place. It essentially would -- what I would anticipate would be if we did a Section 4 motion and let's say hypothetically that all of it we're asking for deletion, then it comes down to that gets produced in whether it's affidavit or direct form to the Court, and then the Court and whoever the Court designates in terms of a clerk to help review it would be the ones that would need to have access to it. The court reporter may or may not be necessary depending on where that goes.

THE COURT: Very well.

MR. MANGAN: So in terms of overall what we would suggest as sort of the process going forward would be, like I said, the ends of justice order setting it for 60 days.

One of the things to keep in mind, Your Honor, is when the Court receives our motion, and let's say hypothetically we're doing this -- it ends up all being a request for

deletion, when the Court looks at that evidence or that information, the Court has to decide is this helpful to the defense. In my experience in a national security case that we did with Judge Beckwith, part of that involved the defense sharing with the Court ex parte what they anticipated as their potential defenses. That way the Court could have a more -- a little bit of guidance in terms of what you're looking for as to whether or not it's helpful. And I don't know what the defense's position is on this, but at least in that other case the defense asked for time just to review the main discovery so that they could give an educated statement to the Court about what their anticipated defenses were.

THE COURT: Very well.

MR. MANGAN: I think that addresses all I can at this point. I might turn it over to the defense or to the Court for any questions.

THE COURT: Very well. I would love to hear the defense perspective at this conference.

MR. MCBRIDE: Yes, Your Honor.

Let me start with the protective order. Mr. Mangan and I have met and I have made some suggestions, corrections to them. I'll have them to him later today.

One of our issues in the protective order was defining classifications and how the documents may be placed by the government. Those classifications will impact how those

documents may be handled by the defense team.  Mr. Mangan will put together those definitions later for us to review, but I think we're moving forward in a positive manner to get that done expeditiously, Your Honor.  And the defense is eager to get the core discovery that Mr. Mangan has represented is ready to go, and I believe it is given his level of preparation for our meeting on the protective order.

THE COURT:  How do you define "expeditiously"?

MR. MCBRIDE:  I would hope by the end of the week, Your Honor.

THE COURT:  Very well.

MR. MCBRIDE:  With regard to the nonclassified discovery information, one of the concerns the defense has, Your Honor, is the volume of untranslated materials that may be provided to us by the government.  I understand from my discussion with Mr. Mangan that one of the databases, for lack of a better term, of information is a cloud, which there is a huge volume of data.  I don't know how to define that, Judge. That was Mr. Mangan's representation.  He can be more accurate about that.  And I understand that he is endeavoring to go through in a methodical manner to try and find things that are relevant to Rule 16, Brady, Giglio, et cetera, but we have some concerns that something may be left out.

We also have concerns about those documents that are translated, whether they're accurately translated, because

Mandarin has many dialects, and we want to make sure we have the opportunities to properly go through all those discovery.

It's almost somewhat of a help to us that there will be rolling discovery in this matter. But I want the Court to know that there may be some issues that come up along those lines for nonclassified discovery.

With regard to the classified discovery process, I think what Mr. Mangan has recommended as far as the procedure, coming in, having a status conference in 60 days, the defense is in agreement with that. Of course, if the Court is also, it seems from our perspective to be a reasonable step in the right direction.

We would also like, of course, the opportunity if we get to Section 5 to be able to submit to the Court some general theories that may help the Court in assessing our defense in making the determination for what may be admissible or not admissible at the trial, Your Honor, under the rules Section -- or under the Section 6 hearing that we might have.

With regard to classified cleared personnel, we would ask the Court, also ask the government, to proceed with having the court reporter, have that process done for her clearance or his clearance because I know from my own experience, classification procedures have a start and an end and they really can't be truncated. So if they all start now, hopefully they would all be completed about the same time, Your Honor.

THE COURT:  Very well.

MR. MCBRIDE:  Thank you, Your Honor.

THE COURT:  And where are we on clearance for you all?

MR. MCBRIDE:  We have not been offered clearances, Your Honor.  My understanding from Mr. Mangan, just listening to him now, is that he expects most of the classified information to be deleted.  My -- I had the same classification that Mr. Mangan did until six months ago, and, of course, mine terminated with my leaving the Department of Justice, retiring actually.  I don't believe Ms. Cors or Mr. Kohnen have active security clearances either, Your Honor.

THE COURT:  And is the defense seeking security clearance at this time?

MR. MCBRIDE:  Your Honor, it really would depend on what the Court finds to be appropriate for deletion or limitation through the discovery process.  I do think we may want to do that, Your Honor.  We're just not in a position to advise that at this time.

THE COURT:  So should we get started on processing security clearances for you?

MR. MCBRIDE:  I think that is a -- would be a positive step, Your Honor.  We can always terminate those requests.

THE COURT:  And who do you seek security clearances for on behalf of defense counsel?

MR. MCBRIDE:  It would be Mr. Kohnen, myself, and

Ms. Cors, and possibly one staff member, a paralegal.

THE COURT: Well, a background investigation on Mr. Kohnen is going to take a long time.

MR. MCBRIDE: Yes, Your Honor. We may not be successful there either.

THE COURT: Does the government object to defense counsel getting rolled -- rolling on seeking security clearance?

MR. MANGAN: Your Honor, I can reach out to see what the timeline would be for that.

My concern is that at least in other cases I've had, we haven't had to get defense counsel cleared if we were proceeding for a deletion. And that's sort of why CIPA is set up the way it is so that if the right case comes along and you do need cleared defense counsel, you can proceed that way. However, you don't need to do it in every case if you're seeking deletion. So at least in the other cases I've had, we did not need to go down that road. So to us, it might be a little bit premature. At least based on what we're seeing so far, we don't anticipate having any situation where we have classified information that is going to remain classified that we need to share with the defense, you know, with a clearance. So that's why we haven't pursued that at this point, Your Honor.

And then just the other point to sort of echo what

Mr. McBride was saying with regard to the cloud information, essentially I think what we were going to have to do, what we anticipate doing, is for let's say a particular cloud account that has, you know, the sizeable amount of information in it, we've gone through to try to triage as best we can what we would, the government would, seem as -- deem to be relevant and get those translated; and then from that process, whatever we as the government deem would be relevant and perhaps what we were planning to use, we would produce to them in a translated format in addition to giving them the entire account sort of as is. So we would give them sort of the raw account in the same manner we received it but at the same time we would give them the translations of the excerpts that we intend to use or that we deem are relevant. To the extent -- but we do need to give them the entire account, or at least we feel that that would be the best way to approach it in this case. And then if they decide they want to dig in deeper or they want to do their own translation or look deeper, they certainly can do so. But I understand that that would, you know, that may require some additional time on their part.

THE COURT: Very well. I think we wait on defense counsel clearance. I'll talk to the security officer and see if we can accelerate it if it becomes necessary. That's at least my position at this moment. I'd like to talk to the officer the Court has appointed.

MR. MCBRIDE:  Yes, Your Honor.  Thank you.

THE COURT:  Is the Court going to have to get its own Chinese translator?

MR. MCBRIDE:  I hope not, Your Honor.

THE COURT:  Will you expect me --

MR. MCBRIDE:  I'm sorry, Your Honor.

MR. KOHNEN:  Was that question addressed to me, Your Honor?

THE COURT:  Not specifically, but you have some experience in it.

MR. KOHNEN:  Yes.

THE COURT:  Are you guys going to end up saying they've got a translation, you've got a translation, which is the right Chinese, Judge?

MR. KOHNEN:  Your Honor, I left this building almost a year ago hoping I would never have to use that word again.  So with that sort of frame of reference --

THE COURT:  That's a good frame of reference.

MR. KOHNEN:  And I still have that.  You notice I have not yet said a word.

THE COURT:  So maybe?

MR. KOHNEN:  Maybe.  I mean --

THE COURT:  What kind of Chinese is this?  I mean --

MR. KOHNEN:  It's Mandarin.

THE COURT:  Mandarin, all right.  I was just

inquiring.

MR. KOHNEN: We're going to do everything we can to make this as easy on the Court and everybody involved.

THE COURT: Would you highlight that on the transcript, please?

Very well. Has the defense been heard?

MR. MCBRIDE: I'm sorry, Your Honor?

THE COURT: Has the defense been heard?

MR. MCBRIDE: Yes, Your Honor.

THE COURT: The government as well?

MR. MANGAN: Yes, Your Honor.

THE COURT: Okay. Well, this has been helpful to the Court, and I appreciate it. The Court's going to find that given the complexity of the case and the nature of the prosecution, most notably the classified information at issue and thus the extended time necessary for security procedure, the Court finds it's unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by the Speedy Trial Act. Accordingly, the Court designates this case complex. And as an initial matter, the time elapsing from today's date until the next hearing date in about 60 days will be tolled.

Ms. Frankian, are we able to suggest a new conference date about 60 days down the road?

LAW CLERK: Yes, Judge. December 19th at noon?

THE COURT:  December 19 at noon, does that work for the government?  If it doesn't --

MR. MANGAN:  Yes, it does, Your Honor.

THE COURT:  Does it work for the defense?

MR. MCBRIDE:  It does, Your Honor.

THE COURT:  Very well.  We'll set it as such.  Do you want to do it in person in the courtroom as today?

MR. MANGAN:  That would be fine.  Whatever the -- whatever you'd like, Your Honor.

THE COURT:  It's helpful to see you so I can reach out and touch you, if required.

Yes, sir.

MR. KOHNEN:  Judge, if I may, just one thing that has to do with Mr. Xu's detention.

THE COURT:  Okay.

MR. KOHNEN:  The Court may be aware he's up in a special unit at the Milan Federal Correctional Institution, and we're not in a position at this point to argue against that or with that, although we may raise the subject later with the Court.

The more sort of basic thing I want to mention to the Court is his family has sent him a number of books and he also would like a sweatshirt.  And Ms. Cors can put more meat on those bones, if you'd like, but what we'd like is the Court's assistance in letting the folks at the Bureau of Prisons know

that Mr. Xu may indeed warm himself with a sweatshirt that doesn't have any strings in it and that he may read books that can be X-rayed by their security personnel for any contraband.

This is especially important with this gentleman because he's in a foreign country, he doesn't speak the English language proficiently, and he's isolated.  That is, he's kept away from anybody else at the facility.  It seems to us as a result of that, the least the government could allow him are some books and a little warmth.

THE COURT:  Does the government object?

MR. MANGAN:  Your Honor, I do not personally -- personally object.  I don't know what -- what the FCI Milan procedures are or what they allow and don't allow.  I simply can't speak to it at all, Your Honor.

I would note that my understanding is that he is in a special housing unit.  There are some other prisoners who are in that unit.  They could talk to each other so it's not complete isolation, but I understand Mr. Kohnen's point.

We don't have a position on it.  I think, frankly, it would be more appropriate for the BOP to weigh in.  I just don't -- I can't speak to it.

THE COURT:  Very well.  Well, the Court will inquire and would like to facilitate the gentleman having books and an adequate sweatshirt.  So we will begin to make those inquiries.

Is there anything else that requires our attention

today?

MR. MANGAN:  No, Your Honor.

THE COURT:  From the defense?

MR. MCBRIDE:  No, Your Honor.

THE COURT:  Very well.  It's been a high honor and great privilege.

I have a fascinating civil jury trial going if you'd like to stay, but, otherwise, you're free to go.  The Court recesses.

(Proceedings concluded at 1:09 p.m.)

- - -

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of the proceedings in the above-entitled matter.

s/Julie A. Wolfer
Julie A. Wolfer, RDR, CRR
Official Reporter